IN THE COURT OF COMMOM PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| ALEX LITTLEJOHN )<br>15601 Friend Avenue )<br>Maple Heights, OH 44137 ) | CASE NO.: 1:15-CV-01059 |
| ) | |
| Plaintiff ) | |
| ) | |
| -vs- ) | JUDGE DAN AARON POLSTER |
| ) | |
| OFFICER RONALD J. MYERS )<br>City of Cleveland, Division of Police )<br>10600 Chester Avenue )<br>Cleveland, OH 44106 )<br>(This individual is being sued in )<br>his individual and official capacity.) )<br>) | **PLAINTIFF LITTLEJOHN'S**<br>**FIRST AMENDED COMPLAINT**<br><br>**(JURY DEMAND ENDORSED**<br>**HEREON)** |
| ) | |
| -and- ) | |
| ) | |
| CITY OF CLEVELAND )<br>c/o Law Director Langhenry )<br>Cleveland City Hall )<br>601 Lakeside Avenue, Room 106 )<br>Cleveland, OH 44114 ) | |
| ) | |
| Defendants ) | |

Now comes Plaintiff, Alex Littlejohn (sometimes hereinafter "Littlejohn"), by and through counsel, and for his Complaint against the above Defendants states and avers as follows.

## INTRODUCTION

1. This is a civil rights action stemming from an incident that occurred in the City of Cleveland on May 3, 2014, during which Plaintiff, Alex Littlejohn, was shot in the lower back by Cleveland Police Officer Ronald J. Myers (hereinafter, "Myers"). As a direct and proximate result of the actions and inactions of the Defendants, Plaintiff suffered a severe and permanent spinal cord injury which has left him paralyzed. Further, and as a direct and proximate result of the actions and inactions of the Defendants, Plaintiff continues to endure physical and emotional pain and suffering. Plaintiff Littlejohn seeks compensatory damages, punitive damages, and reasonable attorneys' fees and costs incurred in this action.

2. Plaintiff Littlejohn asserts claims under Title 42 U.S.C. § 1983 of the United States Code for violation of his right to be free from excessive force under the protection of the Fourth Amendment to the United States Constitution.

3. Plaintiff Littlejohn asserts a § 1983 claim against the Defendant City of Cleveland, Ohio for failure to properly train and/or supervise its police officers, and for promulgating customs, policies and/or procedures which proximately caused the violation of Plaintiff's federal Constitutional rights, all under the authority of *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978).

4. Plaintiff asserts state common law claims for assault and battery and negligent hiring, training and supervision.

## PARTIES

5. Plaintiff Alex Littlejohn is, and was at all times relevant, a citizen of the State of Ohio who resided in the City of Cleveland during the course of the underlying events.

6. Defendant City of Cleveland, Ohio ("Cleveland") is, and was at all times relevant, a political subdivision and unit of local government duly organized under the laws of the State of Ohio. The City of Cleveland is a political subdivision/entity and is a "person" subject to being sued pursuant to 42 U.S.C. § 1983.

7. Defendant Ronald J. Myers (Myers) is, and was at all times relevant, a police officer employed by the City of Cleveland, Ohio acting under the color of state law. Defendant Myers is a "person" under 42 U.S.C. § 1983. Defendant Myers is sued herein in his individual and official capacities.

8. This action is brought pursuant to claims arising under the laws of the State of Ohio, 42 U.S.C. § 1983, and the Fourth Amendment to the United States Constitution. This action is also brought pursuant to 28 U.S.C. §§ 1983, 1985 and 1988 as it is also an action for compensatory damages, punitive damages, and attorney fees.

## STATEMENT OF FACTS

9. On May 3, 2014, at or around 8:30 p.m., Plaintiff Alex Littlejohn was being chased, on foot, by Officer Myers to an area adjacent to a Family Dollar store located at or near the corner of East 34th and Payne Avenue in Cleveland, Ohio.

10. Officer Myers tackled or otherwise restrained Littlejohn.

11. At the time Officer Myers tackled or otherwise restrained Littlejohn, Littlejohn was not armed.

12. Littlejohn, attempting to evade arrest, pushed himself up and away from Officer Myers.

13. When Littlejohn was approximately 10 to 15 feet from Officer Myers, Myers shot Littlejohn in the lower back. Officer Myers shot Littlejohn despite the fact that Littlejohn was not harming or attempting to harm Officer Myers. Rather, Littlejohn was fleeing from Officer Myers when he was shot.

14. In an attempt to justify shooting Littlejohn, Officer Myers provided inaccurate information to the City of Cleveland officials responsible for conducting an internal investigation of Myers' use of deadly force. Myers alleged that he and Littlejohn were involved in a struggle for Myers' gun at the time Littlejohn was shot. As such, Myers alleged Littlejohn was shot at close range and the shooting was justified. In reality, however, Littlejohn was an unarmed suspect who was shot as he fled from Myers.

15. Officer Myers' shooting of Littlejohn was reckless and/or with a malicious purpose and with ill-will.

16. The City of Cleveland police department has a pattern and practice and/or custom and policy of negligently hiring officers not suitable for the position, of failing to properly train and supervise officers, and of retaining officers unfit for said position. The City of Cleveland had unconstitutional pattern and practices and/or customs and policies in effect at the time of the incident that contributed to the paralysis of Alex Littlejohn. In 2002 the Cleveland Police Department came under the review of the United States Department of Justice Civil Rights Division (USDOJ) for issues concerning excessive use of force. In 2004, the USDOJ made recommendations to the Cleveland Police Department to correct its use of force policy and to establish new review mechanisms for

officer involved shootings. In 2014, the USDOJ found that the City of Cleveland did not implement the policy and practice reforms and/or the requisite reforms were not fully maintained over time.

17. Analysis of Cleveland Police Department documents revealed that between 2009 through 2011 six officers had used excessive force on thirty-nine suspects; only one of which was armed, and that out of the cases investigated the CDP found all of the uses of force justified. The six officers that had been using excessive force were all hired since 2008. One officer in particular, Kevin Smith had been involved in over half of the excessive force incidents, as he reported using force on 22 suspects. In particular on December 4, 2014 the United States Department of Justice Civil Rights Division found that there is reasonable cause to believe that the City of Cleveland, Cleveland Police Department engages in a pattern or practice of using unreasonable and unnecessary force in violation of the Fourth Amendment of the United States Constitution that denies citizens of their guaranteed rights, privileges or immunities.

18. The USDOJ found a custom and/or policy and pattern or practice of the use of unnecessary and excessive use of deadly force, including shootings and head strikes with impact weapons; and that Cleveland Police Department officers fired guns at people who did not pose an immediate threat of death or serious bodily injury to officers or others, and that officers used guns in a careless and dangerous manner including hitting people on the head with a gun when lethal force is not justified. The USDOJ Civil Rights Division noted two cases in which officers engaged suspects physically while holding a gun in their hand and the gun inadvertently discharged in the midst of a

physical struggle. The USDOJ Civil Rights Division found the following uses of force unreasonable in violation of the Fourth Amendment.

19.     On November 29, 2012, over 100 Cleveland Police Department officers conducted a high speed police chase in violation of City policy and fatally shot Timothy Russell and Malissa Williams, two unarmed African American civilians. Officers initiated the chase when the car drove by a building and backfired which some officers mistook for gun fire. During the chase there was confusing and contradictory radio traffic that incorrectly indicated that the occupants of the car may be armed and firing from the car. None of the supervisors asserted control over the chase and some participated. The chase ended in a school yard where thirteen different officers fired over 137 shots at the car. Unarmed Timothy Russell and Malissa Williams were both shot over twenty times by Cleveland Police Department officers. The officers fired so many shots that officers assumed the occupants of the car were returning fire, but evidence later showed that the only shots fired were from fellow officers. The Ohio Bureau of Criminal Investigation and Identification conducted an investigation into the incident and issued a report that, "raised serious questions about CDP's policies, training, supervision, communication, and technology." Ohio Attorney General, Mike DeWine stated that, "Command failed. Communications failed. The System failed. Policy, training, communications, and command have to be so strong and so ingrained to prevent subjective judgment from spiraling out of control. The system has to take over and put on the brakes. On November 29, 2012, the system failed everyone."

20.     On December 27, 2012 Cleveland's Mayor Jackson requested that the USDOJ Civil Rights Department review the department's use of force policies.  The

6

USDOJ found that the City of Cleveland has a policy, custom and practice of failing to adequately investigate officers' use of excessive force; a policy, custom and practice of failing to conclude that uses of force by Cleveland Police Officers constituted excessive force despite the fact that an objective analysis of the facts supported such a finding; as well as a policy, custom and practice of failing to discipline those officers who had engaged in excessive force. The USDOJ's report and findings, incorporated herein by reference, are set forth at: http://www.justice.gov/sites/default/files/opa/press-releases/attachments/2014/12/04/cleveland_division_of_police_findings_letter.pdf.

21. In 2012 another officer shot a man that was lawfully armed carrying an open container of beer and appeared to be cooperating with officers' commands. When an officer asked him to stop he refused and walked to a porch and sat down his can of beer. He turned toward the officers' vehicle and walked forward to speak with them, the first officer saw a gun in his waistband and yelled "gun" pointing his weapon at him. The victim raised his hands above his head, and then lowered them a bit to ear level and the first officers shot and struck him in the abdomen. The USDOJ found the officers use of force unreasonable and excessive.

22. In 2013 a Cleveland Police Department Sargent shot at a victim as he ran from a house where he was being held against his will by armed assailants. Prior to responding to the call, officers received information that a man was being held against his will in his house by two armed men. The victim eventually escaped the two armed men holding him against his will and as he ran from the house in his boxers an officer ordered him to stop. He continued to run toward the officers seeking safety and refuge, and the

7

sergeant on the scene shot at him twice. The UDSOJ found the use of force unreasonable and excessive.

23. In 2010 an officer shot a man that was fleeing a scene after he threatened a woman. The man was seated in a car with the engine running, and the officer pointed a gun at him and told him to turn the car off. The man sped away brushing against the officer with the side of the car as he fled the scene. The officer shot at him from behind as he left the scene hitting him in the shoulder. The USDOJ deemed the use of force unreasonable as the threat diminished when the suspect was past the officer.

24. There were several incidents in which officers fired at fleeing vehicles in which the suspect's flights did not pose a threat of serious bodily injury or death to the officers or others. The USDOJ stated that firing at or from a moving vehicle is rarely effective and presents extreme danger to innocent persons, as it is difficult to shoot at or from a moving car with accuracy. In 2013 the Police Executive Research Forum recommended that the Cleveland Police Department's policy be changed to prohibit the discharge of firearms at or from a moving vehicle unless deadly physical force is being used against the officer or another person present, and the Cleveland Police Department adopted said policy in August 2014.

25. The 2014 USDOJ report further found that Cleveland Police Department had a pattern and practice and/or custom and police of the use of unnecessary, excessive or retaliatory use of less lethal force including tasers, chemical spray and fists, head and body strikes, and a failure to use less lethal force in proportion to the resistance encountered; including punching people in handcuffs who were already subdued, and the

use of force as punishment for the person's earlier verbal or physical resistance to a command but not based on the current threat posed by that person.

26. In January 2011 officers apprehended Edward Henderson a mentally-ill African-American after he fled from police in a vehicle. Eventually Mr. Henderson surrendered and lay prone on ground while being handcuffed. After Mr. Henderson was restrained officer Smith and officer Lentz began kicking him and striking him breaking his orbital bone, breaking his nose, and detaching his retina. A helicopter camera captured the entire incident; however, the officers never filed a use of force report despite the obvious use of force and the severity of his injuries. Both officers were charged with assault and the USDOJ 2014 report found the use of force unreasonable and excessive.

27. There are several incidents in which the USDOJ found that the City of Cleveland police department used unreasonable and excessive force on minor children. In another incident, an officer punched a handcuffed 13 year-old boy in the face several times after arresting him for shoplifting. Officers placed the minor in the back of the police cruiser. While still restrained the 13 year-old began kicking the door and kicked an officer in the leg. The officer sat on the 13 year-old's legs and punched him in the face 3-4 times until he was dazed and had a bloody nose. The USDOJ found the use of force unreasonable and excessive. In another incident, an officer used a taser on a juvenile twice as two other officers held him to the ground. Officers alleged that he matched a description for someone that had been seen stealing from a store. The USDOJ found the use of a taser on a child otherwise restrained unreasonable. The USDOJ also found that Cleveland Police Department officers use excessive force against persons who are mentally ill or in crisis, including instances in which an individual is not suspected of

having committed a crime at all. The USDOJ further cited in the 2014 report that officers subject individuals to stops, frisks, and full searches without the requisite level of suspicion in violation of the Fourth Amendment; and individuals were detained on suspicion of having committed a crime with no record of an articulable reason for the detention. The USDOJ 2014 report also stated that there was a systemic failure to file use of force reports and to comply with departmental policies and protocols of investigating uses of force which contributed to a pattern and practice and/or custom and/or policy of the use of excessive and unreasonable force in violation of citizen's constitutionally guaranteed rights.

28. The USDOJ found that the Cleveland Police Department fails to institute proper systems and policies to provide the supervision necessary for sufficient oversight of officers' use of force, fails to provide consistent and clear polices and/or enforce existing policies on when and how to use and report force, fails to implement systems to ensure the use of force is consistently reported and investigated thoroughly and fairly to determine whether the department needs policy, training, tactical, or changes in equipment for officer and civilian safety, fails to address emerging problems through the use of aggregate data to determine patterns and trends and institute corrective measures for unlawful and dangerous behavior that place citizens at risk, and fails to ensure that officers receive proper use of force training, which all amount to an environment that causes systemic deprivation of citizens' constitutional rights.

29. The USDOJ found a custom and policy and/or pattern and practice that supervisors tolerated and sometimes promoted and participated in the use of excessive force, conducted improper and biased investigations into the use of excessive force, failed

to implement constitutional policies regarding excessive force and/or failed to uphold policies in existence, failed to maintain the proper data regarding individual officers' and departmental uses of force, and failed to take corrective measures when identifying excessive use of force by individuals. The USDOJ found that in general there is a lack of experienced, well-supported, well-trained supervisors, and that supervisors tolerate the use of unreasonable and excessive force and other improper and unlawful practices, and in some cases endorse it. Supervisors and the department officials and employees failed to conduct proper and objective investigations officers' use of force, identify and respond to patterns of at-risk behavior, and/or provide officers with the support, training, supervision, and equipment to perform job functions safely and effectively. The USDOJ determined that several of the Cleveland Police Department's systems for investigating and holding officers accountable for the use of excessive force are flawed, including Internal Affairs, the Use of Deadly Force Investigation Team, and the Tactical Review Committee. Oftentimes, the investigations were conducted with the intent to justify the officers' actions instead of discerning truth. In fact, numerous investigators admitted to the USDOJ that the quality of the investigations is compromised by investigators' apparent bias in favor of clearing the officer instead of objectively pursuing all of the available facts. Some investigating officers responsible for reviewing officers' use of deadly force admitted that they investigate with the goal of casting the officer in the best light possible and most officers applied the improper "beyond a reasonable doubt" evidentiary standard when determining whether the officer used excessive and/or unreasonable force. The USDOJ report elaborated that, "It is almost as if the goal of the chain of command in many incidents is not to create a complete record of the incident

that can be subjected to internal and external review." In this matter, had the City of Cleveland adequately evaluated the clothing, ballistics and forensics surrounding Myers' shooting of Littlejohn, they would have determined that Littlejohn was unnecessarily shot while running away from Myers and was therefore the victim of excessive force.

      30. The Cleveland Police Department also fails to adequately investigate civilian complaints of use of excessive force, although they are required to conduct a full and complete investigation of each civilian complaint per the Charter of the City of Cleveland. The USDOJ found that the City failed in its duty created within the charter which contributes to a pattern and practice of the use of excessive force. The failure to conduct proper investigations was first found in a 2004 USDOJ review; the 2014 USDOJ finding stated that the issue has worsened not progressed. In tolerating supervisors' failure to investigate uses of force the police department misses the opportunity to correct dangerous behavior, and instead sends the message that there is little oversight or concern about officers' use of force. The admittedly biased investigations that apply improper evidentiary standards were found to be deeply rooted and cutting at the heart of the City of Cleveland Police Department's accountability and, "emblematic of the type of practice that justifies a finding under Section 14141," of the Violent Crime and Law Enforce Act of 1994. Over a three and a half year period the USDOJ concluded that out of the 1,500 officers only 51 were disciplined in any fashion related to use of force, most of the charges were for procedural issues such as failing to file a report, charges were deemed unfounded or dismissed and a finding of excessive force was "exceedingly rare." A Cleveland Police Department Office of Professional Standards employee stated that a deadly force incident had not been reviewed since 2012. Officers were only suspended on

six occasions for use of force. USDOJ found that the Cleveland Police Department does not implement appropriate corrective measures to discipline officers or to develop training aimed to correct improper and unconstitutional practices, and some supervisors actively discouraged officers from reporting uses of force and instructed them not to complete use of force documents in instances when one was required. The Cleveland Police Department also failed to examine and analyze use of force reports that were generated to detect common patterns and trends. The USDOJ found that the Cleveland Police Department's failures are such that it cannot timely, properly, and effectively determine how much force its officers are using, and under what circumstances, whether the force was reasonable and if not, what discipline, change in policy, training, or other action is appropriate. The Cleveland Police Department does not use an adequate early intervention system to help identify risky and problematic trends in officer behavior before a pattern of misconduct arises; such as, the pattern or practice of excessive use of force. Instead of serving the local community and adopting and enforcing appropriate policies to implement effective community policing, the USDOJ found that the Cleveland Police Department has instead fostered an "us versus them" mentality and created an occupying force in the city as evidenced by the war zone sign hanging Cleveland Police Department vehicle bay that reads: "Forward Operating Base."

      31.    The USDOJ found that the Cleveland Police Department has a custom and policy and/or pattern and practice of failing to properly train officers on appropriate use of force, and that officers' lack basic support, skills, and knowledge required to safely and effectively respond to situations that commonly arise in law enforcement encounters. The Cleveland Police Department has a duty to ensure its officers are properly trained,

13

that training is reinforced through ongoing instruction; and that officers are consistently held accountable for failing to abide by their training. The failure to do so has contributed to the pattern and practice of excessive force identified within the Cleveland Police Department that places the community in danger. The Cleveland Police Department does not devote enough time to training on use of force, and fails to analyze use of force reports to determine what training is necessary to bring the department into compliance. In particular, officers draw and point firearms at citizens too often, and do not appear to know how to safely handle firearms and lack confidence in their ability to control situations accidentally discharging weapons or shooting the wrong individual. Officers do not know how to effectively de-escalate situations before resorting to use of force, and officers informed investigators that they do not receive enough training, especially scenario based training, and training on how to control subjects. Officers too often escalate incidents instead of using accepted tactics to de-escalate tension, and Cleveland Police Department officers commit tactical errors that endanger the Cleveland community and themselves. The employment of poor and dangerous tactics place officers in dangerous situations or create dangerous situations, where use of force becomes inevitable placing officers and civilians at unnecessary risk. The tactical errors may result in use of additional force and cause constitutional violations, such as firing weapons in a manner that place bystanders in danger, sometimes accidentally firing and hitting nothing, or shooting people and seriously injuring them. For example, officers respond to scenes unsupervised and group together with little or no cover. As a result of these improper tactics, officers place themselves in harms' way and increase the likelihood of needing to fire shots. The USDOJ found that Cleveland Police Department has no idea

how often its officers point guns at civilians, and when officers point their guns with such frequency at community members those members can come to feel as though they are under siege. The questionable tactics utilized by the Cleveland Police Department as identified by the USDOJ parallel the same tactical errors made by Officer Myers in the instant matter who did not need to shoot at a fleeing, unarmed Alex Littlejohn.

32. Plaintiff Alex Littlejohn incurred serious and permanent physical injuries, mental and emotional distress and other economic and non-economic damages as a direct and proximate result of the Defendants' conduct and failures.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Claim Against Defendant Myers for Excessive Force in Violation of the Fourth Amendment

33. Paragraphs 1 through 32 are incorporated by reference herein as if fully rewritten.

34. At the aforementioned time and place, Defendant Myers, acting under color of law and within the course and scope of his employment as a police officer with Defendant the City of Cleveland, used unnecessary, unreasonable, outrageous, and excessive force on Littlejohn in violation of his rights guaranteed by the Fourth Amendment.

35. Defendant Myers' use of unnecessary, unreasonable, outrageous, and excessive force, as described herein, constitutes wanton, willful, reckless, unjustifiable, and malicious conduct warranting the imposition of exemplary punitive damages.

36. Faced with the circumstances present at the aforementioned time and place, a reasonably prudent law enforcement officer would or should have known that the

use of force described herein violated Littlejohn's clearly established Fourth Amendment rights to be free from excessive force.

37. As a direct and proximate result of Defendant Myers use of force in violation of Littlejohn's Fourth Amendment rights, Littlejohn sustained economic and non-economic damages, including, but not limited to, severe and permanent physical injury, physical and emotional pain and suffering, all of which will continue into the future.

## SECOND CAUSE OF ACTION
### Assault and Battery

38. Paragraphs 1 through 37 are incorporated by reference herein as if fully rewritten.

39. Officer Myers actions, as described herein, constitute assault and battery, as well as willful, wanton, intentional, and reckless conduct under the law of the State of Ohio.

40. As a direct and proximate result of Defendant Myers' assault and battery, Littlejohn sustained physical injuries and emotional distress.

## THIRD CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

41. Paragraphs 1 through 40 are incorporated by reference herein as if fully rewritten.

42. Through their unreasonable and unlawful conduct, Defendant Myers either intended to cause Littlejohn emotional distress or knew or should have known that his actions or inactions would result in serious emotional distress. Further, Myers' actions

16

toward Littlejohn were so extreme and outrageous as to go beyond all possible bounds of decency and were intolerable.

43. Defendant Myers' actions directly and proximately caused Plaintiff Littlejohn psychic injury from which he suffers and will continue to suffer into the future.

## FOURTH CAUSE OF ACTION
### Negligent Hiring, Training, and Supervision

44. Paragraphs 1 through 43 are incorporated by reference herein as if fully rewritten.

45. Defendant City of Cleveland acted in a wanton and reckless manner, with a malicious purpose and/or in bad faith, relative to its hiring, training and supervision of its police officers, including Officer Myers. The City of Cleveland Police Department was the subject of an investigation by the United States Department of Justice which concluded that the City failed to properly train, supervise, investigate, punish/address matters involving police officers using excessive force. This longstanding pattern and practice by the Defendant City of Cleveland directly and proximately led to Plaintiff Littlejohn's injuries and damages

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 Against Defendant City of Cleveland

46. Paragraphs 1 through 45 are incorporated by reference herein as if fully rewritten.

47. The Defendants have, under color of state law, deprived Plaintiff Alex Littlejohn of rights, privileges and immunities secured by the Fourth Amendment to the U.S. Constitution.

17

48. The City of Cleveland Police Department has a pattern and practice of police officers engaging in excessive force. The City of Cleveland Police Department also has a pattern and practice of failing to adequately investigate uses of lethal and non-lethal force. To the degree the City of Cleveland Police Department internally investigates their Officers' use of force, the City's findings in favor of the police are overwhelming and almost statistically impossible. The City of Cleveland's failure to adequately investigate Myers' shooting of Littlejohn is one representative example of a larger informal policy, pattern and practice of the Cleveland Police Department condoning, expressly or implicitly, the use of excessive force by its Officers.

49. Defendant City of Cleveland maintained a policy and/or custom and/or pattern and/or practice of inadequately and improperly investigating citizen complaints of police misconduct and officers' use of excessive force and/or allowing the use of excessive force, failing to properly supervise Cleveland Police Department officers. Defendant City of Cleveland was aware of problems with police officers' use of excessive force, yet the City of Cleveland failed to investigate and/or reprimand said behavior, and failed to discharge said officers for their misconduct, thereby ratifying such conduct. Defendant City of Cleveland maintained a policy and/or custom and/or pattern and practice of failing to properly train Cleveland Police Department officers, including but not limited to, how to use appropriate levels of force. Defendant City of Cleveland maintained a policy and/or custom and/or pattern and practice of failing to conduct fair and impartial investigations into officer misconduct, use of excessive force, and police shootings. The above said acts of misconduct were perpetuated, tolerated and not reprimanded by Defendant City of Cleveland. Thus, Defendant City of Cleveland

inadequately discouraged constitutional violations perpetrated by its law enforcement officers and ratified and or perpetuated conduct and the use of excessive force and other above-mentioned improper and unconstitutional conduct. As such, Plaintiff Alex Littlejohn's Constitutional rights were violated. As a result of the above-mentioned polices and customs and/or pattern and practices, Defendant City of Cleveland officers believed that their inappropriate actions would not be subject to proper monitoring by supervisors, and that misconduct would not be subject to investigation nor sanction, but would instead be tolerated by Defendant City of Cleveland. The above facts illustrate a deliberate indifference on the part of Defendant City of Cleveland policy makers and officials.

50. Although the City of Cleveland policymakers were on notice of the obvious need to train and supervise their Officers relating to excessive force, they failed to adequately train and supervise the individual officers in that regard.

51. As a direct and proximate result of these failures by the Defendants, Plaintiff Littlejohn sustained injury, a loss of his rights, economic and non-economic damages.

**DAMAGES**

52. Paragraphs 1 through 51 are incorporated by reference herein as if fully rewritten.

53. As a direct and proximate result of the Defendants' conduct, Plaintiff Alex Littlejohn has suffered a loss of his Constitutional rights, physical injury, pain, mental anguish and emotional distress, as well as economic and non-economic losses, some or all of which are be permanent.

19

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendants, jointly and severally, for:

(A) Compensatory and consequential damages for all the injuries identified in the amount in excess of Twenty Five Thousand Dollars ($25,000.00);

(B) Punitive damages against individual Defendants in an amount to be determined at trial for the willful and malicious conduct of these Defendants;

(C) Attorneys' fees and the costs of this action and other costs that may be associated with this action; and

(D) All other relief that this Court deems equitable, necessary, and just.

> */s/Paul J. Cristallo*_____
> PAUL J. CRISTALLO  (0061820)
> Cristallo and LaSalvia, LLC.
> The Brownhoist Building
> 4403 St. Clair Avenue
> Cleveland, OH 44103
> Telephone:    (216) 400-9260
> Facsimile:    (216) 881-3928
> E-Mail:       paul@makeitrightohio.com
>               cristallolaw@gmail.com
>
> COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

> *Paul J. Cristallo*_____
> PAUL J. CRISTALLO
> Attorney for Plaintiff Alex Littlejohn