UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEX LITTLEJOHN, | ) | CASE NO. 1:15 CV 1059 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| THE CITY OF CLEVELAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This is an excessive force case stemming from an incident that occurred in the City of Cleveland on May 3, 2014, during which Plaintiff Alex Littlejohn was shot in the back, after committing an armed robbery, by responding Cleveland Police Officer Ronald J. Myers. Before the Court is Defendant Ronald Myers' Motion for Summary Judgment ("Motion"). (**Doc #: 24**.) Officer Myers contends that, even construing all disputed facts in Littlejohn's favor, he is nonetheless protected by qualified immunity and entitled to judgment as a matter of law on the excessive force claim. The parties agreed to conduct discovery limited to the question of qualified immunity. The Court has reviewed the Motion, the opposition brief (Doc #: 28), the reply brief (Doc #: 30), and the evidence attached thereto. Because the central issue in this case involves a material factual dispute requiring resolution by a jury, the Court **DENIES** the Motion.

**I.**

On April 30, 2015, Plaintiff Alex Littlejohn filed this action against the City of Cleveland and Officer Myers in the Court of Common Pleas, Cuyahoga County, Ohio. On May 27, 2015, Defendants removed the case to federal court based on the court's jurisdiction over the federal

excessive force claim. On August 2, 2015, Littlejohn filed a First Amended Complaint alleging claims against Officer Myers for excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983, assault and battery, and intentional infliction of emotional distress.[1] The First Amended Complaint also alleges a *Monell* claim against the City of Cleveland for excessive force, as well as claims for negligent hiring, training and supervision.

A Case Management Conference was held on August 20, 2015 at which time defense counsel voiced his intention to file a dispositive motion on the question of qualified immunity. The parties agreed that discovery limited to the question of qualified immunity was appropriate prior to full discovery, and they agreed to file a joint stipulation of facts.

On November 24, 2015, the parties filed a document entitled "Joint Stipulations of Fact for the Purpose of Determining Qualified Immunity Prior to Full Discovery." (Doc #: 23 ("Jt. Stips.").) The Joint Stipulations contain facts that the parties agreed the Court must construe in Littlejohn's favor when analyzing the dispositive motion. Littlejohn was deposed on January 22, 2016.

On February 17, 2016, Officer Myers filed the pending Motion, attaching Littlejohn's deposition transcript (Doc #: 24-2), and a declaration of Officer Myers which states, in pertinent part:

> From the initial radio call through the time Plaintiff Alex Littlejohn was handcuffed and arrested I had a good faith belief based on information received and my training and experience that Mr. Littlejohn, a suspect in an armed robbery in progress, was armed with a gun and dangerous.

(Doc #: 24-1 ¶ 3.)

---

[1] Defendant Myers has also asked the Court to dismiss the state law claims. However, the only question before the Court at this time is the question of qualified immunity.

On March 15, 2016, Littlejohn's counsel took a video deposition of Officer Myers. On April 4, 2016, Littlejohn filed his opposition brief with the following attachments: Littlejohn's deposition transcript (Doc #: 28-1), Littlejohn's declaration (Doc #: 28-2), Officer Myers' deposition (Doc #: 28-3 ("Myers Dep.")), the deposition exhibits (Doc #: 28-4), Paul Cristallo's declaration (Doc #: 28-5), and a copy of the video deposition of Officer Myers (Doc #: 28-6).

Littlejohn's and Myers' version of events leading up to the shooting are largely undisputed. On May 3, 2014 at approximately 9:00 p.m., Alex Littlejohn and his stepbrother, John Tisdel, went to the Family Dollar Store located at 3407 Payne Avenue in Cleveland, Ohio with the intention of robbing it, using Tisdel's gun. (Jt. Stips. ¶ 1.) Officer Myers and his partner, Officer Andrew Hayduk, responded to a dispatch regarding that robbery. (Id. ¶ 3.) When the officers approached the store, they did not see Littlejohn or his stepbrother, but Littlejohn, who says that he held Tisdel's gun during the robbery, saw the officers, told his stepbrother, and they decided to flee. (Id. ¶ 7.) Before exiting the store, Littlejohn handed Tisdel's gun back to him. (Id.) Tisdel fled west toward a nearby Dave's Supermarket, while Officer Myers pursued Littlejohn, who fled to the back of the Family Dollar Store which was partially surrounded by a fence. (Id. ¶¶ 8-10.) Littlejohn tried to climb over the fence to escape, but Officer Myers caught up with him, grabbed him around his waist and threw him to the ground, face down with his arms splayed out in front of him. (Jt. Stips. ¶¶ 9, 11, 17.) Littlejohn was wearing baggy pants. (Id. ¶ 13.) When Myers grabbed Littlejohn around the waist to pull him off the fence, he further pulled Littlejohn's pants down, exposing Littlejohn's waist and hips and the top of his underwear . (Id. ¶ 14.) Myers performed a hand sweep of Littlejohn's person and found no gun. (Id. ¶ 19.) Myers sat on Littlejohn's back straddling him when he radioed

-3-

dispatch to say that he had one suspect in custody. (Id. ¶¶ 18, 19.) Myers did not mention that Littlejohn was, or may be, armed. (Jt. Stips. ¶ 18.) Shortly thereafter, Officer Myers took out his handcuffs and cuffed Littlejohn's right hand. (Id. ¶ 23.) In another attempt to flee, Littlejohn, who had been compliant up to this point, decided to escape. (Id. ¶ 24.) He bucked his hips and partially threw Officer Myers off his back. (Id.) Myers, however, still had control of the handcuffs. (Id. ¶ 24.) Here is where the parties part factual company.

Littlejohn avers that, when he disengaged himself from Officer Myers, he turned to flee and 3 to 4 seconds (or 10 to 15 feet) later, Officer Myers shot him in the back. (Jt. Stips. ¶ 33.) Littlejohn avers that at no time did he threaten Officer Myers, his hands were empty and visible, he had the opportunity to reach for Myers' service weapon or taser but did not, and he made no furtive movement as he was attempting to flee. (Id. ¶¶ 27-31.) He avers, and it is undisputed, that Officer Myers never yelled for him to "freeze" or otherwise stop before Myers shot him in the back. (Id. ¶ 32.)

Officer Myers avers that, when Littlejohn tried to buck him off, he wrapped his arms around Littlejohn and felt a gun in his waistband. (Myers Dep. at 77.) Myers avers that he and Littlejohn engaged in a face-to-face fight, exchanging punches. (Id. at 86.) He testified that he "specifically remembered" Littlejohn grabbing the taser with both hands. (Id. at 93.) And when Littlejohn tried to grab the taser, Officer Myers pushed him away, drew his gun and shot him "to stop the fight." (Id. at 93-94.) He later told an investigating officer that he shot Littlejohn from a distance of about three feet. (Doc #: 28-5 at 4.)

//

-4-

As a result of Officer Myers' shot, Littlejohn suffered a permanent spinal cord injury that has left him paralyzed. Littlejohn subsequently pled guilty to aggravated robbery, kidnapping, and assault with a weapon specification, and was sentenced to 28 years in prison.

## II. Standard of Review

Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). On the other hand, if a reasonable jury could return a verdict for the nonmoving party, summary judgment for the moving party is inappropriate. *Baynes v. Cleland*, 799 F.3d 600, 606 (6th Cir. 2015). The movant bears the initial burden of showing that there is no material issue in dispute. *Id*. at 607 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is deemed material only if it might affect the outcome of the case under the governing substantive law. *Id*. (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994), in turn citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986)). In reviewing a motion for summary judgment, the court must view the facts and any inferences reasonably drawn from them in the light most favorable to the nonmoving party. *Id*. (citing *Kalamazoo Acquisitions, LLC v. Westfield Ins. Co*., 395 F.3d 338, 342 (6th Cir. 2005)).

## III. Applicable Law

Littlejohn alleges a Fourth Amendment claim against Officer Myers under 42 U.S.C. § 1983, which imposes civil liability on persons who, acting under color of state law, deprive a citizen of his federal constitutional rights. *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004)). The Supreme Court has held that defendants in § 1983 suits are entitled to qualified immunity

insofar as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011). Once a defendant raises a qualified immunity defense, "it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity." *Id*. (citing *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006)).

In order to determine whether qualified immunity applies to an excessive force claim, the Court undertakes a two-part inquiry: (1) whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated, and (2) whether that right was clearly established. *Saucier*, 533 U.S. at 201; *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008). Although Saucier mandated that these questions be addressed in that numerical order, that requirement has since been relaxed. *Pearson v. Callahan*, 555 U.S. 223,

> In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court explained,
>
> Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead. . . . Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.

*Id*., 471 U.S. at *2 ("The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape."). It has been clearly established in the Sixth Circuit that an officer who employs deadly force against a fleeing suspect without reason to believe that the

suspect poses a significant threat of serious physical harm to himself or others constitutes an excessive force violation. *Bouggess v. Mattingly*, 482 F.3d 886, 887 (6th Cir. 2007) (holding that a law enforcement officer may not shoot in the back a suspect he does not reasonably believe poses a significant threat of serious physical harm to himself or others).

In determining whether an excessive force violation has occurred, the Court must determine whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "In determining whether an officer's actions were reasonable, the specific facts of each case are key." *Morrison v. Board of Trustees of Green Tp.*, 583 F.3d 394 (6th Cir. 2009) (citing *Graham*, 490 U.S. at 396)).

Moreover, in cases like this, the court should assess the reasonableness of a seizure by deadly force in distinct stages. *Bouggess*, 482 F.3d at 889. "[W]hether the use of deadly force at a particular moment is reasonable depends primarily on an objective assessment of the danger a suspect poses *at the moment*. The assessment must be made from the perspective of a reasonable officer in the defendant's position." *Id*. (citing *Brosseau*, 543 U.S. at 197 (emphasis added)). That assessment requires the Court to ask whether the officer had probable cause to believe that the suspect posed a threat of serious physical harm, either to the officer or to others. *Id*. (citing *Garner*, 471 U.S. at 11). In applying the probable cause standard, the Court must focus on the severity of the crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Bouggess*, 482 F.3d at 889 (citations omitted). Absent probable cause, a police officer may not seize a fleeing felon by employing deadly force. *Id*. (citing *Garner*, 471 U.S. at 11-12.)

Finally, summary judgment is inappropriate where there are contentious factual disputes over the reasonableness of the use of deadly force. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902-03 (6th Cir. 1998) ("This is because the reasonableness of the use of force is the linchpin of the case."). When the legal question is completely dependent upon which view of the facts is accepted by the jury, the district court cannot grant a defendant qualified immunity on an excessive force claim. *Id*. (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989) (inner quotation marks omitted)).

### IV. Analysis

It is crucial for purposes of this motion to separate Officer Myers' decision-points and determine whether each of his particular decisions was objectively reasonable. *Bouggess*, 482 F.3d at 890 (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996)). Officer Myers made two decisions. First, he decided to arrest Littlejohn. Second, after Littlejohn broke free, he decided to shoot him. There is no question that Officer Myers had probable cause to believe Littlejohn had committed a crime and that his first seizure was reasonable.

The "nub of the case" is whether Officer Myers' decision to shoot Littlejohn was reasonable. *Bouggess,* 482 F.3d at 890. The relevant time for this inquiry is the moment immediately preceding the shooting. *Id*. (citing *Dickerson*, 101 F.3d at 1162). The Court must focus on whether Officer Myers had probable cause to believe that Littlejohn posed a serious danger to him or others when he was trying to flee. *Id*. (citing *Estate of Bing v. City of Whitehall*, 456 F.3d 555, 570 (6th Cir. 2006)). Under the facts properly viewed in Plaintiff's

favor at this preliminary stage of litigation, a jury could conclude that Officer Myers did not have such probable cause. *Id*.

Littlejohn has testified that he did not have a gun on his person when he fled the Family Dollar Store. He testified that he tried to flee when he disengaged from Officer Myers. He avers that he did not have a gun on his person, he never engaged in a fight with Officer Myers or threatened him verbally, he never saw Officer Myers' taser, he never tried to grab Officer Myers' service weapon, his hands were visible and empty, and he made no furtive movements. In short, he tried to flee. Littlejohn's testimony and declarations are internally consistent. Tangible evidence also supports Littlejohn's version of events. DNA testing excluded Littlejohn from having made contact with Officer Myers' taser ((Jt. Stips. ¶ 38; Doc #: 28-5 at 8), and the ballistics evidence showed that Littlejohn was shot in the back at 10 to 15 feet (Jt. Stips. ¶ 37), not in the front at 3 to 5 feet, as Officer Myers testified. There is no evidence that a 9 mm handgun was recovered either on Littlejohn's person or on the ground near where Littlejohn and Officer Myers struggled.

Officer Myers' asserts that he had a good faith belief that Littlejohn was armed and dangerous when he shot him. Myers' subjective belief, however, is irrelevant for this type of facts-based analysis. *Goodwin*, 781 F.3d at 321. The question is whether, construing the facts in the light most favorable to Littlejohn, Officer Myers had probable cause to believe that Littlejohn posed a threat of serious physical harm to Myers or others when he shot him. Unlike Littlejohn's testimony and declarations, Officer Myers' testimony regarding the sequence of events is inherently inconsistent, it is inconsistent with what he told investigating officers, and it

is inconsistent with the tangible evidence. In other words, a jury could reasonably disbelieve Officer Myers' testimony that he felt a gun on Littlejohn's person. *Goodwin*, 781 F.3d at 322.

Officer Myers testified that he never saw a gun on Littlejohn (Myers Dep. at 44-45, 54, 77, 100); he never heard a gun drop to the ground (id. at 118); he didn't feel a gun when he swept Littlejohn's back and sides (id. at 58-63); and Littlejohn did not have a gun in his hands which were splayed out in front of him (id. at 62). Furthermore, Officer Myers did not mention a gun when he radioed dispatch to say he had one male in custody. (Id. at 64.) He admitted that using one hand to radio when he had not secured Littlejohn was a mistake, and that his indication that he had one male in custody would have lowered the listening officers' concern for the security of the situation. (Myers Dep. at 76.)

As to the alleged gun, Officer Myers testified that when he reached around Littlejohn's torso, he felt a gun. When asked what it was that he felt or the shape of it, he responded, "Just, I could tell it was a gun." (Myers Dep. at 88.) When asked which part of the gun he felt, he responded, "It was probably the handle." (Id.) Later, he testified, "I felt something hard in his waistband." (Id. at 91.) When asked what it was he felt that led him to believe it was a gun, versus a cell phone, credit card case, or other weapon, Officer Myers responded, "I can't answer that." (Id.) When asked if he recalled whether or not he felt the object through Littlejohn's clothing or the actual object, he responded, "I don't recall." (Id. at 91-92.)

Based on the video deposition in which Officer Myers showed what happened when Littlejohn tried to flee a second time, it is hard to see how Officer Myers could have felt a weapon in Littlejohn's waistband because he was holding Littlejohn's arms way above his waist. (Myers' Dep. at 68-69.)

-10-

> I put my chest to his back, and I wrapped my arms around underneath of his arms so he couldn't, I was worried when he – I was *assuming* the whole time that he had a gun. . . . And then so the one thing I don't want him to do is be able to have access to his waist band. So what I did is, I grabbed his, you know, I went down. I put my chest on his back, and I grabbed underneath of his arms so his arms couldn't come down. So I was kind of like in a bear hug with him like this with his elbows keeping his hands up.

(Id. at 69 (emphasis added).)

Following the incident, Investigating Officer Tom Arnelli interviewed Officer Myers about what had happened–the details of which he put into a Supplementary Report. The Report tells a very different story than Myers' deposition testimony in relation to the alleged gun:

> When the fight begins LITTLEJOHN quickly brings his left hand in towards his waistband on his left hip. P.O. MYERS attempts to grab that hand and when P.O. MYERS hand reaches the suspects hand near the suspects waist P.O. MYERS feels a hard metal object he believed to be a gun.

(Doc #: 28-5 at 4.)

Approximately one week later, Detective Raymond Diaz interviewed Officer Myers when preparing an affidavit to search Tisdel's car. The affidavit tells yet another version of events:

> Affiant avers that P.O. Myers observed Littlejohn exit the same side door. Littlejohn ran to the rear of the building and Myers pursued him. As Littlejohn tried to jump a fence, Myers grabbed him and was able to get one handcuff on him. Littlejohn began to fight the officer; during the struggle Myers felt what he believed to be [a] handgun in Littlejohn's waistband. While P.O. Myers was trying to handcuff Littlejohn, a 9 mm handgun fell to the ground.

(Doc #: 28-4 at 8 ¶ 3.) When he was asked at deposition if the part about the 9 mm gun was accurate, Myers responded,

> A. Yes. Wait, no. Not when I was trying to handcuff him. When we were fighting, the gun must have fell to the ground.

-11-

> Q. Is it your recollection that at the time that you and Mr. Littlejohn were in a physical fight that his gun fell to the ground?
>
> A. Yes. I never saw it, but that's what happened.
>
> Q. Did you hear it fall to the ground?
>
> A. No.
>
> Q. And so if you didn't see his gun fall to the ground and you didn't hear it fall to the ground, how is it that you're able to testify today that Alex Littlejohn's gun fell to the ground during the time that the two of you were fighting?
>
> A. Because he had a gun when we were on the ground, and he didn't have a gun after I handcuffed him.

(Myers Dep. at 118.) And later,

> A. The gun must have fell to the ground sometime between, somewhere where, from the time he started fighting with me, so it could have fell out when we were still on the ground. I don't know, but I never – I've never seen this gun with my eyes that he had. I felt it, but I've never seen it.

(Id. at 120.) And later still,

> A. I know he had the gun when I put the handcuff on his right wrist, and I know he didn't have the gun when I put the handcuff on his left wrist. So sometime between those two periods of time a gun fell from his waistband.
>
> Q. And just so we're clear, you never saw the gun?
>
> A. I've never physically seen the gun with my eyes.
>
> Q. And you did not hear the gun fall to the ground?
>
> A. Correct. I still – when we were fighting, I still believed he had the gun.
>
> Q. And so you never heard the gun fall to the ground?
>
> A. Again, no.

(Id. at 121.)

-12-

Additionally, after shooting Littlejohn, Myers did not search for a gun or tell officers that Littlejohn had a gun. (Myers Dep. at 102-05.) Perhaps most damaging is Officer Myers admission that he did not believe Littlejohn was reaching for his alleged gun during the struggle, but that "he was just trying to get away at that time." (Id. at 84.) And finally, there is no evidence that a 9 mm handgun was recovered from the sight of the scuffle. In its reply brief, Myers' posits that maybe Littlejohn was carrying *two* guns that could have been hidden anywhere on his body. (Doc #: 30 at 2.)

As previously stated, the application of reasonableness requires careful attention to the facts and circumstances of each particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to flee. *Garner*, 471 U.S. at 396. Armed robbery is unquestionably a severe crime. However, the second crime, resisting arrest and fleeing the scene, is another matter.

The Sixth Circuit has explained,

It cannot reasonably be contended that physically resisting arrest, without evidence of the employment or drawing of a deadly weapon, and without evidence of any intention on the suspect's part to seriously harm the officer, could constitute probable cause that the suspect poses an imminent danger of *serious* physical harm to the officer or to others. *Cf. Garner*, 471 U.S. at 11, 105 S.Ct. 1694 ("It is not better that all felony suspects die than that they escape.").

*Bouggess*, 482 F.3d at 891.

"Merely resisting arrest by wrestling oneself free from officers and running away would justify the use of *some* force to restrain the suspect. For example, this court has held that officers may tackle a suspect who resists." *Bouggess*, 482 F.3d at 891 (citing *Lyons v. City of Xenia*, 417 F.3d 565, 577 (6th Cir. 2005) and *Burchett v. Kiefer*, 310 F.3d 917, 944 (6th Cir. 2002)). On the

-13-

other hand, "while such action by a suspect justifies force, it does not justify *deadly* force, especially when the struggle has concluded and the suspect is in flight." *Garner*, 471 U.S. at 10-12. Officer Myers admitted that, during the scuffle, he did not believe that Littlejohn was reaching for his alleged gun; but that he was just trying to flee. Thus, Myers' own testimony undermines whether Littlejohn posed an immediate threat to his safety or the safety of others, and reflects Myers' belief that Littlejohn was in fact attempting to evade arrest. *Bouggess*, 482 F.3d at 892 ("A suspect's flight on foot, without more, cannot justify the use of deadly force."). Even if the Court were to credit Myers' assertion to Detective Diaz that a 9 mm handgun fell out of Littlejohn's waist band–an assertion that he later denied–Myers would have had no reason to shoot Littlejohn unless Littlejohn was reaching for the gun, a claim that Myers never made.

Myers' credibility, under the facts of this case, is a question for a jury to decide. *Goodwin*, 781 F.3d at 323 (denying qualified immunity where the plaintiff presented "a series of specific facts that could plausibly place the witnesses' credibility at issue in the mind of a reasonable juror."); *Dawson v. Dorman*, 528 Fed.App'x 450, 452 (6th Cir. 2013) ("Courts may not resolve credibility dispute on summary judgment.") (citing *Anderson*, 477 U.S. at 255.). "This rule of procedure typically applies where there is a *genuine* conflict in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Id*. (citation omitted).

Myers' citation to case law does not support his position. He cites *Untalan v. City of Lorain*, 430 F.3d 312 (6th Cir. 2005), for the proposition that a police officer's use of deadly force is not excessive and is objectively reasonable if the officer has probable cause to believe that the suspect poses a threat of severe physical harm to the officer or others. *Untalan* is

factually distinguishable. There, plaintiffs sued a police officer who fatally shot their schizophrenic son after he lunged at a second officer with a butcher knife in plaintiffs' kitchen. Littlejohn maintains that he did not have a gun, he did not threaten Officer Myers verbally or physically, and he made no furtive movements. And Myers has admitted that he did not believe Littlejohn was reaching for a gun, but that Littlejohn was trying to get away.

Myers cites *Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991), for the proposition that it is irrelevant that the suspect was actually unarmed if the suspect's actions could cause a reasonable officer to fear imminent and serious physical harm. In *Reese*, the police officer responded to a radio call of a robbery occurring in a convenience store. The officer spotted the suspected getaway car and pursued it until the car spun out of control and came to a stop with the passenger side directly in front of the officer's now-stopped patrol car. There, it was undisputed that the officer drew his gun and repeatedly ordered the occupants to raise their hands, and that the front-seat passenger repeatedly raised and lowered his hands before the officer shot him. Here, in contrast, Littlejohn denies making any furtive movements or grabbing Officer Myers' taser before he turned to flee on foot, and it is undisputed that Officer Myers never warned Littlejohn that he was going to shoot him if he did not stop.

Finally, Myers cites *Mullenix v. Luna*, 136 S.Ct. 305 (2015), for the proposition that the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses deadly force to act to stop a suspect. That case is also distinguishable. In *Mullenix*, representatives of a motorist's estate sued a state trooper, alleging that the officer used excessive force when he shot and killed a motorist who was fleeing from arrest during a high-speed chase. There, the officer shot the driver after the driver called dispatch twice claiming to have a gun and

-15-

threatening to shoot pursuing officers if they did not abandon their pursuit. Here, there is no evidence that Littlejohn claimed to have a gun and that he threatened to use it against Officer Myers if he did not abandon his pursuit.

"Effective policing requires that courts accord police officers a certain latitude to make mistakes." *Bouggess*, 482 F.3d at 894. However, the legal standard is an objective one. "Even a split-second decision, if sufficiently wrong, may not be protected by qualified immunity." *Id.*

Ultimately, the court must determine whether the totality of circumstances justifies a particular sort of seizure. *Goodwin*, 781 F.3d at 321. Viewing the facts in the light most favorable to Littlejohn, the Court cannot grant judgment in Officer Myers' favor on qualified immunity grounds. *See, e.g., Griffith v. Coburn*, 473 F.3d 650 (6th Cir. 2006) (denying qualified immunity when the officer used a choke hold to restrain an individual who posed no threat to the officers or anyone else); *Sigley v. Kuhn*, 205 F.3d 1341 (6th Cir. Jan. 31, 2000) (unpublished) (denying summary judgment on qualified immunity grounds when deadly force was employed after a suspect tackled an officer and wrestled him to the ground because there was a disputed issue of fact as to whether the suspect tried to take away the officer's gun); *Cardona v. City of Cleveland*, 129 F.3d 1263 (6th Cir. Nov. 10, 1997) (unpublished) (denying qualified immunity where the officer and suspect struggled, and the suspect was shot during the struggle, where there was a disputed issue of fact as to whether the officer and suspect struggled over a gun); *Bouggess*, 482 F.3d 886 (denying summary judgment on qualified immunity grounds where there was a factual dispute over whether a suspect, whom it later turned out carried a gun, struggled with the officer who fatally shot him.)

## V. Conclusion

In sum, because this case involves disputed issues of fact that go to the heart of the case, and the Court must construe the facts in favor of Littlejohn, the Court **DENIES** the Motion (**Doc #: 24**).

**IT IS SO ORDERED.**

                                     */s/ Dan A. Polster     May 17, 2016*
                                     **Dan Aaron Polster**
                                     **United States District Judge**